Chadwick *v.* Chadwick.

---

ARMENIA CHADWICK

*v.*

ALBERT F. CHADWICK.

In an action for divorce by the wife for cruel treatment, where the only cruelty charged is the use of abusive and filthy language, proof of gross abuse of marital rights is not available.

---

On petition, answer and proofs.

*Mr. John H. Reynolds* and *Mr. Eugene Emley,* for the petitioner.

*Mr. Wood McKee* and *Mr. John W. Griggs,* for the defendant.

GREEN, V. C.

The marriage of these parties was the result of no love romance. He was a widower, forty years of age, with four children, whose

ages ranged from eleven to three years. She was a spinster, thirty-two years old, who had for some years maintained herself by her occupation of stenographer and typewriter. Their wooing consisted of negotiations carried on through a matrimonial agency in New York city, and resulted in their marriage in Brooklyn, March 24th, 1892. It could scarcely be expected that their union, having its inspiration in such methods, would be at once characterized by the loving devotion or cheerful self-sacrifice which so largely contributes to married happiness. He was the principal of a public school in Paterson, and did not think his salary justified him in a certain style of living which his wife says she had every reason to expect. It is evident that her disappointment was keen when she realized the responsibilities of the household and the care of her husband's small children. After a short season of comparative harmony, there were occasions of disagreement, more or less violent in character. The defendant's mind, from some cause, became affected, and after examination by physicians, he was, about April 30th, 1892, a little over a month after his marriage, sent to the state insane asylum, at Morris Plains, as suffering from an " acute attack of primary dementia." He remained at the asylum until about the 2d of July following, when he left there and went to a relation's, where he remained five weeks, and returned home the latter part of August. From this time on there is complaint by the wife of unkind treatment, with occasions of abuse, culminating in a serious quarrel on December 23d, 1892. Each charges the other with the blame for this outbreak and claims to have been more or less injured by the other. This is the only occasion, so far as the evidence shows, when she suffered physical injury from his violence. On Christmas day following, however, they came to an agreement with reference to their differences and mutually signed a compact as to their future conduct towards each other and the children. This was followed by a resumption of marital relations, and the incident of the reconciliation and its accompanying cohabitation must be regarded as a condonation of previous offences of a violent character. The petition is for a limited divorce and alimony on the ground of extreme cruelty.

To warrant such a decree in this case it must appear that the defendant, after condonation, was guilty of some matrimonial offence which was sufficiently aggravated to be a cause in itself for limited divorce, or of such character and degree as to revive the offence condoned.

No specific charge of physical violence between December 23d, 1892, and March 7th, 1893, when Mrs. Chadwick left her husband's house, is made in the petition. It avers that for a time after Christmas day his conduct was more quiet and peaceable, but that he soon again fell into his habits of abuse by degrees and became more and more violent in his language, and used vile and filthy language against her in the presence of the children; that the violence increased until the 7th of March, when she became so shattered in health and so much in fear of physical violence that she could endure his cruel treatment no longer and that she thereupon left his house; that for four months prior to her leaving her husband's said house she was in constant fear of physical violence, so that her nerves were shattered, her health was impaired and she could neither eat nor sleep. It will be noted that there is here no specification of any attempt or threat of personal violence, and she states no acts which led her to fear such injury. Whether such fears were well founded or not we have no means of knowing other than she says that she experienced them. The only direct charge of any kind of cruelty during this period is that he used abusive language to her. She does say, however, that from this constant dread her nerves were shattered and her health impaired so that she could neither eat nor sleep.

In her testimony she says that his treatment affected her nervous system and caused her to break down, resulting in disease of the uterus, for which she has since been treated. She is, of course, competent to speak of the state of her health and nerves, but it is very questionable if she is competent to testify as to the causes of their condition. She says further, that after Christmas he treated her a little better, but gave her no assistance in the house, and that the abuse complained of on almost every occasion, or three-quarters of the occasions, came from her

reluctance or refusal to gratify his sexual desires, and that on such occasions he called her vile names and used opprobrious epithets. It is only due to him to say that he explicitly and emphatically denies the latter charge. I am forced to the conviction that her testimony in this regard is much exaggerated. The defendant is a man of education and culture, and of seeming refinement. There was nothing in his conduct or appearance on the stand to indicate that he would indulge habitually in the vile and violent language attributed to him. The above, however, is the only specification of cruelty in the interval between Christmas and her leaving him that she gives in her testimony. The other incidents spoken of do not, it seems to me, justify any fear of personal violence.

Her testimony, as well as that of her physician, Dr. Unger, and the fact that there was but one occasion when she suffered from his violence, develops, in my judgment, the true reason for, not only her condition of health, but for her leaving her home, and that is the excess, it may be the abuse, by the husband of his marital privileges. Dr. Unger says that she was suffering from enteritis and vaginitis, and she attributes such condition to undue sexual intercourse. Gross abuse of marital rights is a ground for a divorce *a mensa et thoro* for extreme cruelty (*Moores* v. *Moores, 1 C. E. Gr. 275 ; English* v. *English, 12 C. E. Gr. 71, 579*), but it is not available under a general charge of cruelty, and if so given must be disregarded as irrelevant. *Moores* v. *Moores, supra.* · There is stronger reason for these rules when the only specification of cruelty charged is the use of vile and filthy language. On the first attempt by counsel to introduce evidence of the abuse of marital rights, defendant's counsel objected, and the objection was sustained except so far as it might relate to the occasions when physical violence was charged in the petition. These were all before the condonation. There is no evidence, in my opinion, of conduct on the part of the husband, after December 25th, 1892, on which to base a decree on the ground of extreme cruelty, or which would revive the matrimonial offences condoned, as I think the evidence of his having employed abusive and vile language is very much colored.

Chadwick *v.* Chadwick.

Nor, in my judgment, did the wife leave her husband's house on March 7th from any fear of personal violence at his hands, or for any reason other than an aversion to gratify his carnal desires. The incidents of her leaving, her visit to his school, her promise to return shortly, her promise to come back if he would treat her differently, as well as various later occurrences, show that she was in no fear of his injuring her physically by angry and cruel treatment.

Neither of these parties is without blame. Each was, as is usual in cases where marriage is the result of negotiation rather than affection, deceived as to the other's means. She manifested on the stand, as a witness, her disappointment, not only with the home surroundings she found, but with her husband's ideas of economy and duty. He, on his part, whether from his mental misfortune or not, manifested, particularly in his letters, an exacting and complaining disposition, making serious charges with reference to trivial acts and posing as a master rather than as a husband. But if the cause of this separation, as I gather it from the whole case, is to be considered, there is no evidence that until this trial he knew, as a medical fact from professional sources, that his wife's physical condition could be attributed to his marital excesses. I am not prepared to say that had he had such knowledge he would not have restrained his indulgence, and that a resumption of their relations might not be had with entire safety to the wife's health. Separation from bed and board is mainly as a protection against future probable acts of cruelty, this probability being based upon the former conduct and the character and disposition of the parties. *English* v. *English, supra.* They have both acted in a most foolish and reprehensible manner, not only in their personal treatment of one another, but also in their correspondence; but each professes a certain amount of affection for the other, possibly as much as, under existing circumstances, could be expected, and I do not think the court should, by its decree, now legally separate them for a definite time or until they mutually apply for its rescission, the husband in the meanwhile maintaining the wife living away from him and his home.